Good morning. Gee, how come we don't have our usual big crowd of spectators today? Something that they know that we don't. Anyway, welcome. We have a number of cases that are on the briefs today. As you know, one of your colleagues had to cancel two of the oral arguments because of a family situation. So we're happy that you all came to keep us busy this morning. And anyway, we'll have two cases, obviously no break. And the first case is United States v. Pena, case number 19-2050. And you may proceed when you're ready, counsel. Good morning, Your Honor. Stephanie Wolfe for Tommy Pena. May it please the court. The Supreme Court said in Booker that the new approach would, quote, make the guideline system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct, a connection important to the increased uniformity of sentencing that Congress intended its guideline system to achieve. Here, the district court broke the connection between Mr. Pena's real conduct and the sentence imposed when it varied upwards by 222 months from the top of Mr. Pena's guidelines range, a variance of nearly 20 years, to a 30-year sentence that was more than 2 1⁄2 times the top of the guideline range and nearly three times the bottom. Your client asked for an upward variance as well, correct? Your Honor, he acknowledged that some upward variance might be appropriate, and I do the same today. But the variance that the court imposed, 222 months, is an extreme variance. It was untethered from his offense conduct, and it was substantively unreasonable. How do we find the sweet spot where it's a high variance but not substantively unreasonable? Your Honor, I think there are three... Your client was looking for additional 50 months. Obviously, the court went way above that. I mean, that's obvious. But where do we draw the line in this case between 50 and 230? Is that how many extra months? 222, I believe. Your Honor, I think there are three sort of guideposts that the court can use to determine that this sentence is substantively unreasonable. The first is the guidelines themselves. The guidelines have a lot to say about how much different offense characteristics or criminal history characteristics should impact a sentence, how much change there should be based on those facts. The second is a comparison with this Court's other cases and the cases of other courts of appeals. And the third is the vast disparity between Mr. Pena's sentence and the sentence of his co-defendant, Mr. Conde, who served only 36 months for conduct that was at least as egregious as the conduct that Mr. Pena was convicted of, but served only a tenth of the time. Of course, there were lots of reasons for his sentence being considerably lower because he cooperated. Your Honor, there was that significant reason for a sentence being considerably lower. But the variance that Mr. Conde received, Mr. Conde's guidelines were actually quite similar to Mr. Pena's. They were both in criminal history category four. The district court, relying on the government's representation because, of course, we don't have Mr. Conde's PSR in the record, but the district court accepted the government's representation that Mr. Conde's guidelines were actually one offense level above Mr. Pena's. And while cooperation, of course, is entitled to significant consideration, the disparity between those two is extreme. Mr. Pena, some of the conduct that the district court relied upon to enhance Mr. Pena's sentence was actually Mr. Conde's conduct in brandishing a weapon, pointing his gun at Ms. Colette Lacy, who was pregnant, and her son. Where's your client brandished a gun also? I'm sorry? Your client brandished a gun at innocent people also? Your Honor, he brandished a gun entering the house at Mr. Lacy, which was exactly... But there were children in the home, right? I mean, there were Mr. and Mrs. Lacy and their children. Mrs. Lacy's pregnant. Does it really matter whether he's brandishing the gun at Mr. Lacy and Mr. Conde's brandishing the gun at Mrs. Lacy? I mean, it's the setting that's concerning to the district court. Yes, Your Honor, that's certainly correct. However, I do think there is a significant difference between their conduct. Ms. Lacy testified that after initially pointing his gun at Mr. Lacy upon knocking on the door and entering the home, that Mr. Pena then put his gun in his pocket, and that she was not so afraid of him. She testified that she actually followed him from room to room and followed him out of the house when he left, whereas Mr. Pena... I mean, Mr. Conde actually pointed his gun both at Ms. Lacy, who was while Mr. Pena was in another room, so he wasn't even present when that conduct occurred. Obviously, that is a co-defendant's conduct and the situation overall is concerning, but when comparing the sentence that Mr. Conde received and the sentence that Mr. Pena received, it's clear that Mr. Conde's conduct was at least as egregious as Mr. Pena's. What's our standard of review here? Your Honor, the district court's decision is reviewed for abuse of discretion, but the district court does have an important role to play in assessing the substantive reasonableness of sentences. It is unusual, admittedly, for a defendant to win a challenge on substantive reasonableness, but that doesn't make it a toothless review. We all know that people are human and district courts err, and occasionally those errors are substantive. It is clear that the district court put a lot of effort into writing its opinion here. Nonetheless, it is substantively unreasonable. Do we have a substantive reasonableness case in the circuit that would be kind of your best example where we've... Your Honor, there are... I know we've looked at plenty of downward departures and variances in this, but I haven't seen that many upward. Is there a case that involves an upward variance? Your Honor, there are several. The first, I think there are several that are useful, and I would start with the one that the district court relied on most heavily, which is United States v. Gant. This is, is that a Tenth Circuit case? It is, Your Honor. And that is a 924, is an unusual case because the single count of conviction in that case was a 924C. And so the district court places a lot of weight on the 924C charge as the district court said it was doing. It places the majority of the weight of this variance on the 924C charge. And in doing that, the district court relied on Gant. But Gant is unusual because the 924C is the only count of conviction. And 924C, the severity of the penalty provisions of 924C are both because there is a mandatory sentence and because that sentence must be consecutive to what is necessarily in almost every case another violent crime, which carries its own serious sentence. So in this case, the district in Gant, the district court varied upwards significantly and that variance was upheld. But it was upheld because the conducted issue was a bank robbery or a credit union robbery. And, and therefore the conducted issue was very different from the heartland of, or from the, from where the guideline reigns would have put the heartland because normally you commit a bank robbery, you have the bank robbery range plus the 924C. And that wasn't the case for Mr. Gant. So the court upheld the variance there. In this case, Mr. Pena's conduct is exactly within the heartland of the carjacking, felon in which he was convicted of. The only fact that changed between Mr. Pena's initial sentencing and his resentencing was his conduct in the Bureau of Prisons. At his first sentencing, the probation office determined and the district court apparently agreed that there was nothing to take Mr. Pena out of the heartland of offenses and offenders. At the second sentencing, the court varied upwards by 222 months. And the only thing that had changed was that Mr. Pena's conduct in the Bureau of Prisons obviously concerned the court. Now that conduct was properly considered. There were a few weapons violations where he was, he was accused of having weapons in the Bureau of Prisons. He was never accused of using a weapon on anyone else. And there was one allegation of a fight and I think, I think an insubordination. But your honors, that conduct does not touch Mr. Pena's offense level. It does not touch his, the actual crimes for which he's being sentenced. If it moves him anywhere in the sentencing table, it moves him along the X axis from left to right. It doesn't move him from top to bottom. Are there any cases where the upward variance was reversed in the Tenth Circuit? Your honor, the, in the Tenth Circuit, there is, there is, there is not a Tenth Circuit case in which the upward variance was reversed that is analogous to this case. But I would point the court to the Fourth Circuit's decision in United States v. Tucker. And I think that is actually the case most analogous to what we're dealing with here. In United States v. Tucker, the district court imposed a sentence on Ms. Tucker who was convicted of a fraud count for, because the district court concluded that she was going to continue committing this type of crime, that she was a habitual embezzler and fraudster and that there was nothing that the court could do other than incapacitate her. And that is very similar to the reasoning that the district court used here. And the court, the Fourth Circuit in, in Tucker reversed that variance. Not, not necessarily because of the degree, although it was a substantial degree. I believe she went from, she went from a sentencing range of about 24 to 30 months and was ultimately sentenced to 12 years. But the reason for the reversal in that case was that the offense conduct was disconnected from the sentence. And here we have the same, the district court drawing a very similar conclusion that Mr. Pena is just going to keep trying to get his hands, I believe the district court's words were, on the most dangerous weapon that he can. But that does not give the district court leeway to impose a sentence that's untethered from the conduct at hand. If the Bureau of Justice, essentially up in criminal history category, it makes the pattern of criminality more serious perhaps than the category four. But at offense level 22, with the criminal history category of six, his guidelines would have been 84 plus 100 or to 105 plus the five year mandatory minimum or mandatory consecutive. We're still less than half of the ultimate sentence that the district court imposed in this case. And so I would ask your honors to consider Tucker as, in terms of the clear line of how far the court is not entitled to go, even under a deferential abuse of discretion standard. There are some other Tenth Circuit cases, your honor, that I do believe will be helpful. The district court, or the government, I believe, calls the court's attention to Giswine. That is an exceptional case in which a large variance was approved. However, I would note that the variance in that case, under even the extremely unusual circumstances there, was only a variance to 240 months. Much smaller variance from a guideline range of 92 to 115. So much, much smaller variance in degree than what Mr. Pena faced. And the circumstances in that case of very broad range, a broader range of criminal activity than the district court had ever seen out of a single defendant, torture of animals and all kinds of extreme facts. Your honor, I would ask your honors to consider the remainder of my time. Thank you, counsel, you may. Thank you. Let's hear from the United States. May it please the court. Counsel, my name is Marissa Ong, and I'm an assistant United States attorney in the District of New Mexico. Tommy Pena has a demonstrated history of possessing dangerous weapons and committing violent felonies, continually putting the safety of those around him in danger. This history began 20 years ago when Pena was merely 13 years old and has persisted through his time at the Bureau of Prisons, where he was serving time for going on a dangerous crime spree in Roswell, New Mexico, which led to his convictions for carjacking 924C and being a felon in possession of firearms and ammunition. The district court properly took all of this into account and did not abuse its discretion in imposing an upward variance to a 30-year sentence. In a thoughtful 43-page opinion, the district court thoroughly explained, tying each of its reasons to 3553A, the justifications for the sentence, and addressed each of Pena's raised arguments why leniency should not have been imposed. If we had the same opinion from Judge Johnson here, but a sentence of 40 years instead of 30 years, would you be defending that? Absolutely, Your Honor. Is there any sentence you would not defend as substantively unreasonable? Any sentence within the statutory limit? In this case, it would have been life because of the 924C conviction. District courts are given wide discretion in imposing sentences, and especially in this case, Judge Johnson, he was the judge that actually sat through the trial back in 2009. He heard from witnesses, including Mr. Conde. He heard from the victims in this case. He went through all of the defendant's criminal history and originally sentenced the defendant to 40 years. After Johnson, the case comes back. Pena's guideline range is significantly lower, but at resentencing, the judge also heard additional evidence from Rache Childress, who works for the Bureau of Prisons. He testified that since Pena has been in BOP custody, he's committed eight additional infractions, five of which involve him possessing dangerous weapons. Those are knives. Two of those knives are in the record. They're Exhibits 9 and 10. The district court found especially troubling the length of the knives and the context with which they were possessed. For one of those possessions, there was testimony elicited that another inmate believed that Tommy Pena was going to stab him. He had to be transferred to a different facility. After he made that allegation, a knife was found under Tommy Pena's bed. So all of these reasons, rightfully so, troubled the district court and supported the district court's conclusion that Mr. Pena had no desire to change his criminal conduct and that he would continue to possess dangerous weapons in the future. I think one of their strongest arguments is the disparity with the co-defendant's sentence, Mr. Conde. I mean, he got, what, 36 months? Yes, Your Honor. Versus 360. Yes, Your Honor. And the district court thoroughly explained the reason why that's not an unwarranted disparity. First, the district court pointed out that Conde actually accepted responsibility for his conduct and testified against Pena at his trial. This was substantial. Conde testified that him and Pena had been friends since childhood. You know from the record that Pena's a dangerous individual. He testified against him at the hearing. And even during Conde's sentencing hearing, his sentencing hearing is not in the record, but the court alludes to it during Pena's second sentencing. And the court stated that Conde had actually been assaulted in jail because of his cooperation. The United States was originally asking, filed a 5K and was asking for 48 months. The judge gave him an additional year off because of that assault. So first, the court stated that he had cooperated. Another reason for the disparity was their criminal history. We don't have Conde's criminal history in the record, but the district court did make a note of saying that he viewed their criminal history differently and went into great detail about Pena's criminal history. They were both in Category 4, though? Excuse me? They were both in Category 4? That's correct. Can you add to our record, perhaps this pre-sentence report, Conde's, so we'd have this information? I'm certainly happy to supplement the record with Conde's PSR if your honors would like to see it. If you could, please do. All right. But regardless of Conde's conduct, I think the important thing to focus on here is Pena's conduct. The reason why the court found that they were not similarly situated was because the district court did not have any post-conviction conduct for Conde when he was sentenced as he did for Pena when Pena was sentenced. The district court did state that it wasn't putting the full weight of the variance on Pena's post-conviction conduct. However, he did give it significant weight, and that was because Pena, since he's been in BOP, has not only continued to possess dangerous weapons, but he actually went to a special management unit for 16 months. This is called the SMU. The purpose of that was to try to rehabilitate him because he had already, by the time he went to the SMU, he had three 104 infractions. Those were infractions for possessing dangerous weapons. He gets sent to the SMU, which is supposed to be a rehabilitative program. He's there for 16 months. He comes back from the SMU, and he receives two additional 104 infractions even after being sent to the SMU. He's caught with knives again. The knives that he's caught with are in the record. One of them was six and a half inches long. The other one was three and a half inches. The district court specifically found that the length of those weapons was particularly troubling. There was testimony at the evidentiary hearing that BOP personnel have been injured before. And while there was no evidence that Pena actually did injure someone, the district court alluded that you could certainly infer that he intended to based on the threat that was made to one of his other inmates. I would like to point out my opposing counsel brought up the Tucker case from the Fourth Circuit. I would point out that that decision was decided before the Supreme Court decision, Gall versus the United States. And in Gall, the Supreme Court made clear that sentencing review must not be based on a rigid mathematical formula that is standard for determining the strength of the justifications. In fact, all of the cases that are cited by the appellant, the Tucker case from the Fourth Circuit, the Curry case from the Fourth Circuit, the McManus case from the Eighth Circuit, and United States v. Ellen, which is a Tenth Circuit case submitted by 28J letter from the appellant, all of those cases were decided before Gall. After Gall came out, there was much more direction as to the appropriate standard of review for sentencing hearings. Gall made clear that trial judges are in a superior position to find facts and judge their import under 3553A. And as I stated previously, that's especially the case here where you have a judge who sat through a trial, was able to evaluate witnesses, was able to listen to the testimony of the victims, was intimately familiar with the facts and circumstances of the offense conduct and Mr. Pena's history. That is the same judge that sentenced Mr. Pena at his resentencing hearing in 2018. The district judge did not base its entire variance on his post-conviction conduct. Rather, the judge also went into great detail about the circumstances of the underlying conviction that troubled the judges, that troubled the judge that included the Colette Lacy was nine months pregnant at the time, her minor children were there. Several days later, Pena is involved in a drive-by shooting. That count of conviction was a felon in possession count. However, the circumstances are particularly egregious. It's not just Mr. Pena possessing a firearm, it's him actually discharging it at people in a public street. Basically, he held it over his head and discharged it in a grassy field in front of an apartment complex. Fast forward, you have him continuing to possess firearms when he stole a motor vehicle from Fred Luna. The next day, when police try to apprehend him, he's in possession of two shotguns and approximately 100 rounds of ammunition. All of this troubled the judge. The judge also went through a thorough explanation of Pena's past convictions and, again, reiterated the post-conviction conduct that troubled him. If your honors have no additional questions, I'm happy to return the rest of my time, but I would ask you to affirm. Thank you, counsel. Thank you. Ms. Wilpass can rebuttal. Thank you, your honors. I'd like to just respond briefly to a few of those points. First, I would submit that Gall does not stand for the proposition that anything up to the statutory after Gall that the greater the variance from the applicable guidelines range, the more compelling the reasons for the divergence must be. This case does not present reasons compelling enough to justify a 222-month variance. Your honor, I did misspeak earlier when I said this court has never reversed a large variance. It did so in Allen. Ms. Ong is correct that Allen was decided before Gall, but Allen, similar to Tucker, was decided on the premise that the disconnect between the offense conduct and between the sentence imposed was too great, and it is similarly too great in this case. The disparity between Mr. Conde and Mr. Pena in this case is not warranted by cooperation. The district court sort of makes a blanket statement that they're not similarly situated because Mr. Conde took responsibility and cooperated. Of course, his acceptance of responsibility was accounted for in the guidelines, and his cooperation merited consideration, but a tenfold disparity is simply too extreme. They were both, as your honor pointed out, in criminal history category 4. Similarly, they were actually co-defendants in one of their prior offenses, so their history up until that point was extremely similar. The post-conviction conduct that the government cites is not enough to justify a variance of this degree, and I think your honors can see that in both United States v. Cade and United States v. Giswine, where both of those defendants were actually convicted of crimes subsequent to an original sentencing and then resentenced. Well, do you think the court put too much weight on the prison conduct? I mean, Conde didn't have any misconduct in prison, did he? Well, your honor, we don't know how Mr. Conde did in prison because I don't believe he was resentenced, but I do think that the district court put substantial weight on that, and it was entitled for conduct of possession of weapons in an extremely dangerous, as the district court acknowledged, BOP facility, where still Mr. Pena is not accused of using those weapons on anyone. All of his record, both these offenses and BOP and prior to this. But he did use the weapon in the drive-by shooting. Your honor, the district court and the government refer to that incident as the drive-by shooting, and I would take slight issue with that. The testimony from Mr. Conde that the credited was that Mr. Conde was driving, Mr. Pena was a passenger, and they were fired upon. Out in public, so they fire back, right? They did return fire after Mr. Conde was shot. That is, I don't think the traditional definition of a drive-by shooting, obviously it does involve the use of a firearm. But I would point your honor to the guidelines in approximating or getting an idea of how much that conduct should change the guideline range. There is, the sentencing guidelines do provide a four-level increase for a felon in possession charge when the gun is used in connection with the crime. Even, now that didn't apply here because of the 924C charges the district court correctly ruled, and I think the guidelines are wise not to double count, not to give somebody a 924. That's just brandishing, isn't it? It's use or possession. And in this case, obviously you could argue use, but that conduct gets a four-level increase under the guidelines. The increase that the district court assessed was at least a 14-level variance. Again, it's just out of proportion to the conduct, disconnected from the actual conduct, and therefore substantively unreasonable. Looks like your time is up. Thank you very much, counsel. We appreciate the arguments. It was well stated and helpful. Thank you. Counsel are excused and the case shall be submitted.